IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RENTPATH, INC. and CONSUMER SOURCE HOLDINGS, INC., | : : : : |
| Plaintiffs, | : CIVIL ACTION NO. : 1:14-CV-01241-RWS |
| v. | : : |
| CARDATA CONSULTANTS, INC., | : : : |
| Defendant. | : |

## **ORDER**

This case comes before the Court on Defendant CarDATA Consultants, Inc.'s Motion to Dismiss [3]. After reviewing the record, the Court enters the following Order.

### **Background**

This contract dispute arises out of Defendant CarDATA Consultants, Inc.'s ("CarDATA") alleged failure to properly advise Plaintiffs of California law's requirements related to reimbursing employees for business use of personally owned vehicles. Plaintiff RentPath, Inc. ("RentPath") operates an online business that helps consumers locate apartments available for rent

nationwide.  (Compl., Dtk. [1-1] ¶ 1.)  Plaintiff Consumer Source Holdings, Inc. ("CSHI"), a wholly owned subsidiary of RenthPath with over three hundred employees, operates RentPath's largest apartment-locating website.  (Id.)

In February 2007, John Domsy, an agent of Defendant CarDATA, approached CSHI and offered to conduct an analysis of CSHI's policy for reimbursing its employees for business use of personally owned vehicles, which Domsy represented was CarDATA's area of expertise.  (Id. ¶ 7.)  In an initial March 21, 2007 meeting, "Domsy claimed that CarDATA had unique expertise and knowledge in advising corporate clients on vehicle business expense reimbursement programs and in devising and administering legally-compliant programs using CarDATA's proprietary databases to develop market-specific reimbursement programs."  (Id. ¶ 8.)  Plaintiffs questioned CarDATA about Plaintiffs' risk and liabilty exposure and how CarDATA proposed to manage regional and market variations in costs.  (Id.)  Plaintiffs then engaged CarDATA to conduct a "Study & Analysis" of Plaintiffs' policies related to reimbursing employees for business use of their vehicles and to come up with "fair car allowance payments . . . for each market."  (Id. ¶ 9.)

On June 21, 2007, Domsy reported CarDATA's findings to Plaintiffs, which showed that CSHI could provide its employees with a tax-free reimbursement plan. (Id. ¶ 10.) When Plaintiffs again questioned CarDATA about risks and how CarDATA managed regional and market differences in establishing it expense reimbursement plan, Domsy again claimed expertise in reimbursement policies and assured Plaintiffs that its program was "legally sufficient." (Id.)

At this meeting, however, CarDATA failed to advise Plaintiffs that the reimbursement program did not satisfy California Labor Code § 2802, which requires employers "to indemnify employees for all necessary expenditures incurred in direct consequence of the discharge of employment duties," including expenses related to business use of personal vehicles, and states that any payments to employees "must be sufficient to fully indemnify the employee [for] actual expenses necessarily incurred." (Id. ¶ 12.) Apparently, CarDATA calculated lump-sum monthly payments that were not sufficient to indemnify California employees for actual business expenses necessarily incurred in the business use of personal vehicles. (Id. ¶ 13.)

AO 72A
(Rev.8/82)

Nevertheless, Plaintiffs and CarDATA then agreed to a one-year contract ("2007 Contract") on July 31, 2007, under which CarDATA would convert CSHI's reimbursement policies to a non-taxable allowance. (Compl., Dtk. [1-1] ¶ 1; see 2007 Serv. Agreement, Dkt. [3-2].) Under the 2007 Contract, CSHI's employees would enter their mileage online with CarDATA, and CarDATA would issue payment to the employees. (2007 Serv. Agreement, Dkt. [3-2] Schedule A.) The contract contained a merger clause that stated that the written agreement represented "the complete and exclusive statement of the contract between CarDATA and Customer," superseding any other agreements or representations. (2007 Serv. Agrement, Dkt. [3-2] ¶ 20.) The clause also stated that there could be no modification of terms "unless in writing and signed by CarDATA and Customer." (Id.)

On July 31, 2008, Plaintiffs and CarDATA agreed to a second contract ("2008 Contract"), which appears to be similar to the 2007 Contract and contains the same merger clause. (Compl., Dtk. [1-1] ¶ 15; see 2008 Serv. Agreement, Dkt [3-3].) The 2008 Contract was set to expire on July 31, 2009, subject to an automatic one-year renewal unless either party provided notice of termination at least thirty days before the end of the one-year period. (Compl.,

4

Dtk. [1-1] ¶ 17.)  Apparently, neither party timely terminated the agreement, and the contract renewed until July 31, 2010.  (Id.)  Plaintiffs allege, however, that after July 31, 2010, "the parties continued a de facto or implied contractual relationship," with CarDATA providing its services in exchange for payment until July 2013.  (Id.)

Moreover, the parties met in 2010 to provide an annual assessment for the previous year and to discuss any changes for the coming year.  (Id.)  Despite its purported expertise, like at other meetings Defendant failed to advise Plaintiffs that its expense reimbursement program did not satisfy California Labor Code § 2802, placing Plaintiffs at risk of significant liabilities.  (Id.)

On December 17, 2012, Juanita Garner, an employee of CSHI, filed a class-action lawsuit in California against Plaintiffs.  (Id. ¶ 19.)  The lawsuit claimed that CSHI's reimbursement method did not properly and fully reimburse its employees for travel expenses in accordance with California law.  Plaintiffs settled the lawsuit on October 10, 2013, incurring over $400,000 in settlement and litigation costs.  (Id. ¶¶ 19-21.)

Plaintiffs brought this action against Defendant CarDATA in Gwinnett County Superior Court alleging breach of contract, promissory estoppel, and

breach of the implied covenant of good faith and fair dealing.  Defendant removed the case to this Court pursuant to diversity jurisdiction.  Defendant now moves to dismiss all claims for failure to state a claim.

## Discussion

### I.     Motion to Dismiss Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most

6

favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  See Iqbal, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

**II.   Analysis**

Plaintiffs' first claim is for breach of a duty owed by Defendant "to ensure that the vehicle reimbursement program it arranged and managed for RentPath conformed with the legal requirements of California law."  (Compl., Dkt. [1-1] ¶ 23.)  Plaintiffs claim they relied on Defendant's purported expertise in the area of employee reimbursement and that, due to its expertise, Defendant knew or should have known that the program violated California law but did not advise Plaintiffs of this risk.  (Id. ¶ 17.)  This breach resulted in insufficient reimbursements to its California employees, causing Plaintiffs to incur over $400,000 in defense and settlement costs.  (Id. ¶ 26.)

Defendant argues that the merger clauses in the 2007 and 2008 Contracts bar Plaintiffs' claims.  Thus, even assuming Defendant verbally promised that

7

its reimbursement program would comply with California law, Defendant states that the merger clause defeats Plaintiffs' claim.  Furthermore, Defendant argues that if the alleged breach did not occur during the original terms of the 2007 and 2008 Contracts, the merger clause still bars any representations made after July 31, 2010, when the renewed 2008 Contract expired, under a theory of implied contract.  (See Def.'s Br., Dkt. [3-1] at 16.)  Because the parties continued performance under the terms of the 2007 and 2008 Contracts, Defendant contends that the parties intended to remain bound under those terms, including the merger clause.  (Id.)

Plaintiffs respond by arguing that they are not bound by the merger clauses because their claim accrued after the expiration of the second service contract on July 31, 2010.  (See Pls.' Resp., Dkt. [6] at 4-5.)  Thus, they say their breach of duty claim arises from an "at will" business relationship.[1]  (See id. at 9.)  Plaintiffs therefore argue that they state a claim, and that discovery is required to reveal the precise terms of the continuing business relationship.

---

[1] Because Plaintiffs do not contest that their claims are based only on events after July 31, 2010, Defendant's Motion to Dismiss [3] is **GRANTED** for any claim based on representations regarding compliance with California law made during the duration of the 2007 and 2008 Contracts.

8

In its reply, Defendant challenges Plaintiffs' argument that Defendant owed them duties under a new implied contract.  Defendant points out that Plaintiffs allege in their Complaint that CarDATA made representations "[i]ndependent of its contracts (written, de facto and implied) with CSHI, . . . and in light of such representations, owed plaintiff a duty to ensure that the vehicle reimbursement program it arranged and managed for RentPath conformed with the legal requirements of California law."  (Compl., Dkt. [1-1] ¶ 23.)  Interpreting that language, Defendant argues that Plaintiffs may not rely on the alleged terms of any written or implied contract for their breach of duty claim because they appear to allege that the duties are unrelated to any contract at all.

The Court finds that Plaintiffs allege sufficient facts to show that a contract existed after the expiration of the written service agreements.  On the other hand, Plaintiffs do appear to allege that the duty on which they relied arose solely from an at-will relationship, not from any written, de facto, or implied contracts.  Nevertheless, the Court finds that Plaintiffs have pled sufficient facts to put Defendant on notice that their claim is based on the ongoing business relationship and representations made in 2010 after the

9

expiration of the written contracts, whether those representations are construed as creating an implied contract or some other duty. Under the liberal notice pleading standards of Rule 8(a)(2), a complaint "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Here, construing all inferences in Plaintiffs' favor, Plaintiffs' Complaint meets that standard.

Still, Defendant insists that if an implied contract existed, all the terms of the written agreements became terms of the implied contract. Although the 2007 and 2008 Contracts contained merger clauses, at this stage the Court cannot find as a matter of law that the subsequent contract incorporated these provisions. See Astral Health & Beauty, Inc. v. Aloette of Mid-Miss., Inc., 895 F. Supp. 2d 1280, 1281 (N.D. Ga. 2012) (stating that " 'the fact that the parties continue to deal under some sort of informal arrangement does not, without more, mean that all the terms of the expired formal contract continue to apply'" (quoting Town of Webster v. Village of Webster, 720 N.Y.S.2d 664 (App. Div. 2001))). Thus, "according to the allegations in the complaint, there was some sort of contract between the parties, and the terms of that contract—based on

10

the parties' expectations and their course of dealing—are left for discovery to reveal." See id. at 1282.

Defendant also moves for dismissal of Plaintiffs' promissory estoppel claim. Plaintiffs allege that Defendant made promises and representations of "legal sufficiency," which Defendant reasonably expected would induce reliance, and Plaintiffs in fact relied on those representations by reimbursing their California employees in the amount Defendant calculated. (Compl., Dkt. [1-1] ¶ 28.) Under Georgia law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." O.C.G.A. § 13-3-44(a). Thus, a party asserting a claim of promissory estoppel must show that "(1) the promisor made certain promises; (2) the promisor should have expected that the party would rely on the promises; and (3) the party relied on those promises to its detriment." F&W Agriservices, Inc. v. UAP/Ga. Ag. Chem., Inc., 549 S.E.2d 746, 749 (Ga. 2001).

Defendant argues that Plaintiffs failed to plead this claim in the alternative to breach of contract. See, e.g., Am. Casual Dining, LP v. Moe's

Sw. Grill, LLC, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006) (noting that "a party is generally permitted to plead both promissory estoppel and breach of contract claims in the alternative").  However, upon reviewing the Complaint, the Court finds that Plaintiffs appear to assert their promissory estoppel claim as an alternative theory of liability.  Defendant also argues that promissory estoppel is not available when there is a contract.  See Bank of Dade v. Reeves, 354 S.E.2d 131, 133 (Ga. 1987) ("These parties entered into a contract the consideration of which was a mutual exchange of promises.  The promises exchanged were bargained for.  Promissory estoppel is not present.").  Again, however, Plaintiffs allege that there were representations made outside the terms of a contract.  In light of these allegations, whether the correct theory of liability (if any at all) is breach of contract or promissory estoppel is a question best left for discovery.

Finally, Plaintiffs bring a claim for breach of the implied duty of good faith and fair dealing.  But this implied covenant  "cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." Myung Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries, 662 S.E.2d 745, 748 (Ga. Ct. App.

2008). Thus, to state a claim for breach of the implied duty of good faith and fair dealing, "a plaintiff must set forth facts showing a breach of an actual term of an agreement." Am. Casual Dining, 426 F. Supp. 2d at 1370 (citations omitted). Given the Court's findings above, the Court cannot make this determination on a motion to dismiss, and so Plaintiffs' claim for breach of the implied duty of good faith and fair dealing is not subject to dismissal.

## Conclusion

In accordance with the foregoing, Defendant CarDATA Consultants, Inc.'s Motion to Dismiss [3] is **GRANTED in part** and **DENIED in part**. It is **GRANTED** as to any breach of contract claim arising from representations made before the expiration of the written contracts on July 31, 2010, and it is **DENIED** as to all other claims.

**SO ORDERED**, this   9th   day of February, 2015.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE